# UNITED STATES

## v.

## Warren B. ANDERSON, 578 92 9613, Staff Sergeant (E–6), U.S. Marine Corps.

## NMCM 96 00467.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 26 Jan. 1995.

Decided 4 Sept. 1997.

Military Judge: J.A. Bukauskas. Review pursuant to Article 66(c), UCMJ, of General Court–Martial convened by Commander, Marine Corps Base, Camp Lejeune, NC.

LT Christopher J. McEntee, JAGC, USNR, Appellate Defense Counsel.

Richard T. McNeil, Civilian Defense Counsel.

Mary Ramsay McCormick, Civilian Defense Counsel.

LT D.M. Harrison, JAGC, USNR, Appellate Government Counsel.

Capt Christopher N. Hamilton, USMC, Appellate Government Counsel.

Before DOMBROSKI, Chief Judge, LUCAS, Senior Judge, and OLIVER, Appellate Military Judge.

DOMBROSKI, Chief Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of committing sodomy and indecent acts with his 11–year–old stepdaughter, in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925 and 934 (1994). The members sentenced the appellant to confinement for 10 years, total forfeitures, reduction to paygrade E–1, and a dishonorable discharge. The convening authority approved the sentence without modification and, except for the dishonorable discharge, ordered it executed. Before this court the appellant sets out five assignments of error.[1] We have

---

1. I. THE MILITARY JUDGE ERRED IN DENY-ING THE DEFENSE REQUEST FOR AN EX-

examined the record of trial, the assignments of error, and the Government's response thereto, and we have considered the oral arguments presented in this case. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.

## Background Facts

This case was fully contested before a general court-martial composed of officer and enlisted members. The child-victim was appellant's 11–year–old stepdaughter. She testified as to some 20 instances of indecent acts by the appellant who fondled her breasts and inserted his fingers into her vagina. She also testified about five instances of fellatio and five instances of cunnilingus with the appellant. There were no signs of physical trauma when the child was medically examined upon her initial report of abuse.

The child reported the acts of sodomy to the trial counsel very late in the progress of the case—some 9 months after the initial report of abuse. Through the testimony of a Naval Criminal Investigative Service (NCIS) Agent, the Government also introduced the appellant's statement, taken at the time of the child's initial report of abuse, in which the appellant admitted the indecent acts but made no mention of any acts of sodomy. The voluntariness of the confession was litigated both in a pre-trial motion to suppress and before the members. There was substantial evidence of inconsistent statements on the part of the child, including recantations of the initial report of abuse, as well as evidence of the child's dysfunctional relationship with her mother, who often resorted to corporal punishment which the child feared. Record at 196, 200, 218.

A clinical psychologist who had examined and treated the child was called by the Government and qualified as an expert in clinical psychology and child sexual abuse. He testified regarding child sexual abuse accommodation syndrome, and he indicated that delayed and fragmented reports of abuse, recantations, and, in this victim's case, the late report of sodomy, were not unusual for a child who had suffered abuse. Record at 230–240.

The appellant testified and denied the validity of his statement to the NCIS agent and denied committing the offenses charged. The defense also introduced evidence of the appellant's good character through the testimony of a number of military supervisors. Record at 264, 304, 305, 312.

The members resolved the factual issues against the appellant, returning findings of guilty after deliberating for about an hour.

## Expert Assistance

In his first assignment of error, the appellant claims that the military judge erred in denying a defense request for an expert with qualifications similar to those of the government's expert. We disagree.

■ RULE FOR COURTS-MARTIAL 703(d), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.)[hereinafter R.C.M.], governs the employment of expert witnesses at Government expense, including the requirement for a showing of relevance and necessity for the expert testimony. Upon a showing of relevance and necessity, the Government is not required to provide a specifically-named expert witness, but may provide an "adequate substitute." *See United States v. Reveles,* 41 M.J. 388 (1995); *United States v. Stombaugh,* 36 M.J. 1180 (N.M.C.M.R.1993); *United States v. Robinson,* 24 M.J. 649, 652 (N.M.C.M.R.1987).

Prior to trial in this case, a defense request for expert assistance was approved,

PERT WITH QUALIFICATIONS SIMILAR TO THOSE OF THE GOVERNMENT'S EXPERT WITNESS.

II. THE MILITARY JUDGE ERRED IN DENYING THE DEFENSE MOTION TO DISMISS THE CHARGES FOR WANT OF A SPEEDY TRIAL, BROUGHT PURSUANT TO THE ACCUSED'S RIGHTS UNDER THE SIXTH AMENDMENT TO THE CONSTITUTION; ARTICLE 10 UCMJ; AND R.C.M. 707.

III. THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT APPELLANT'S GUILT TO BOTH OFFENSES.

IV. THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS HIS CONFESSION.

V. A SENTENCE OF CONFINEMENT FOR TEN YEARS AND A DISHONORABLE DISCHARGE IS INAPPROPRIATELY SEVERE.

and a social worker assigned to the Family Counseling Center was made available to assist the defense. Appellate Exhibit IX. *See* Defense Exhibit D. When the defense learned that the Government intended to call a clinical psychologist to testify, the defense asked the convening authority for the expert assistance of a specific clinical psychologist. He was willing to assist the defense at a rate of $100.00 per hour. Appellate Exhibit X. The convening authority denied the defense request. The request was thereafter renewed before the military judge. Record at 105 *et seq.* After hearing arguments, the military judge denied the defense request.

We note as an initial matter that the defense request to the convening authority and then again to the military judge at trial for an additional expert was styled, and is appropriately reviewed, as a request for expert *assistance.* This assistance was in addition to that which had already been provided to the defense. At no point did the defense indicate any intention to call their named clinical psychologist as an expert *witness,* or make any showing that there was testimony to be offered which would be relevant and necessary. R.C.M. 703(c)(2)(B)(i). The defense counsel asked for expert assistance and got it. The question before us is whether the military judge abused his discretion when he refused the request for additional expert assistance.

 Upon a showing of *necessity,* an accused is entitled to the employment of appropriate expert assistance. *United States v. Garries,* 22 M.J. 288 (C.M.A.1986), *cert. denied,* 479 U.S. 985, 107 S.Ct. 575, 93 L.Ed.2d 578 (1986). In *United States v. Allen,* 31 M.J. 572, 623 (N.M.C.M.R.1990), *aff'd,* 33 M.J. 209 (C.M.A.1991), *cert. denied,* 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992), we delineated a three-part test for establishing necessity: (1) why expert assistance is needed; (2) what would expert assistance accomplish for the accused; and (3) why is the defense counsel unable to gather and present the evidence that the expert assistant would be able to develop. The defense need only make a minimal showing

of need, or necessity for the expert assistance. *United States v. Burnette,* 29 M.J. 473, 475 (C.M.A.1990); *see United States v. Ingham,* 42 M.J. 218 (1995). We do not find that the defense in this case made even that minimal showing of necessity, and we decline to presume such a need.

 The social worker who was provided to assist the defense did, in fact, assist. He *did not* testify on the merits, but he did testify in the sentencing portion of the trial. Record at 347. He was qualified as an expert in social work and child sexual abuse. While certainly lacking the academic credentials of the Government's clinical psychologist, there was no showing by the defense at trial that the social worker provided to the defense was in any manner unqualified, deficient, or incapable of assisting the defense. Specifically, there was no showing he was incompetent to assist in defense preparation for cross-examination of the Government's expert witness, who was obviously an experienced clinical psychologist with substantial credentials.[2] Upon conclusion of the clinical psychologist's direct examination, the defense counsel proceeded to cross-examine the expert without any renewed request for assistance based on the testimony on direct. The Government's announced intention to call a clinical psychologist as an expert witness did not automatically trigger a right in the accused to the assistance of a clinical psychologist additional to the expert assistant already provided. Without any showing of need or necessity, we have no basis to presume that the clinical psychologist requested by name by the defense, would have even disagreed with the Government's expert. The military judge denied the defense request for the named expert on the basis that the defense failed to establish necessity for the expert. This was not an abuse of discretion. *See United States v. Ndanyi,* 45 M.J. 315 (1996). The first assignment of error is without merit.

### Speedy Trial

At trial, the Government and the appellant stipulated to the chronology of pre-arraign-

---

**2.** It appears that the Government substantially complied with the procedural requirements for employment of their expert witness, as contained in R.C.M. 703(d).

ment events as contained in Appellate Exhibit XVIII. Slightly more than 1 year passed between the appellant's interrogation on 27 October 1993 and his arraignment on 31 October 1994. Initially placed in pretrial confinement, the appellant was ordered released 6 days later and placed in a status of pretrial restriction, the conditions of which were subsequently relaxed. There were substantial periods of defense-requested delay approved by the convening authority. Following an initial arraignment on 28 February 1994, the trial was scheduled to proceed on 12 April 1994. On 12 April 1994, with members present and the Government ready to proceed, the appellant indicated he desired to dismiss his civilian and detailed defense counsel and hire new civilian counsel. Subsequently, the military judge approved a defense request for inquiry into the mental capacity and mental responsibility of the appellant. R.C.M. 706(b)(2). Then 3 days before the scheduled trial date of 8 August 1994, the child victim, for the first time, stated to the trial counsel that the sexual abuse she incurred included acts of sodomy. The original charge was withdrawn and then re-preferred, along with a new sodomy charge, on 10 August 1994; arraignment took place on 31 October 1994.

■ In denying the defense motion to dismiss for lack of speedy trial, the military judge entered detailed essential findings. Record at 99; Appellate Exhibit XX. We adopt the military judge's essential findings and conclude that there was no R.C.M. 707 violation. The periods of defense-requested delay prior to the first arraignment were properly excluded for R.C.M. 707 calculations. Similarly, delays after 12 April 1994 were directly attributable to the appellant's desire to hire new counsel and the R.C.M. 706 examination of the appellant. Upon the child-victim's late revelation that appellant had committed sodomy as well as indecent acts, the convening authority's withdrawal and dismissal of the original indecent acts charge, followed by a new referral of that same charge together with a charge of sodomy was proper. R.C.M. 604. After the

new charges were referred, the appellant was arraigned well within the requirements of R.C.M. 707. We likewise find no violation of Article 10, UCMJ, 10 U.S.C. § 810, or any violation of the appellant's constitutional right to a speedy trial. The second assignment of error is without merit.

## Sufficiency of the Evidence

■ This court may affirm only those findings of guilty that are correct in law and fact. Art. 66(c), UCMJ, 10 U.S.C. § 866(c). The test for legal sufficiency is whether any reasonable factfinder, considering the evidence in a light most favorable to the Government, could find all the elements of the offense beyond a reasonable doubt. *United States v. Turner,* 25 M.J. 324 (C.M.A.1987)(citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). The test for factual sufficiency is whether, after weighing the evidence and making allowances for not having had the opportunity to personally observe the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt. *Turner,* 25 M.J. at 325. We conclude that the evidence in this case is factually and legally sufficient to support the findings of guilty. The third assignment of error is without merit.

## Appellant's Confession

■ We have carefully reviewed the appellant's written confession, as contained in Prosecution Exhibit 5.[3] We have also reviewed the evidence on the appellant's motion at trial to suppress the confession, which included the appellant's testimony and the testimony of the NCIS agent who obtained the confession. After considering the evidence, the military judge denied the defense motion to suppress, and he made detailed essential findings. Record at 105; Appellate Exhibit XXII.

There was defense medical testimony to the effect that under stress the appellant would avoid confrontation and acquiesce to authority. However, there was also testimony to the effect that the appellant was an

---

3. In his written confession, the appellant admits to committing indecent acts on the body of his stepdaughter on multiple, separate dates. Acts of sodomy are not indicated in the statement. Of course, since the victim had not yet complained of acts of sodomy, the NCIS agent may not have inquired into such acts.

independent thinker, not a yes-man, and not afraid to speak up or disagree. We find it incredible to believe that this 31–year–old staff sergeant with 14 years of service, who was a high school graduate with some college credits, could be persuaded to falsely admit to committing indecent acts upon his minor stepdaughter on multiple dates. Record at 28. Also, it is unlikely that he really believed he could sign and swear to a false statement incriminating himself and "take care of it afterwards." *Id.* We also consider it noteworthy, as indicated in the testimony of the NCIS agent, that the appellant attempted to minimize his culpability by depicting the 11–year–old child as the aggressor, worthy of blame for the indecent acts. Record at 85–86. We adopt the military judge's essential findings, and we conclude that the appellant's confession was voluntary. We find no error. The fourth assignment of error is without merit.

### Sentence Appropriateness

We specifically find the sentence to be appropriate for the offenses and for this appellant. The fifth assignment of error is without merit.

Accordingly, the findings of guilty and sentence, as approved on review below, are affirmed.

Senior Judge LUCAS and Judge OLIVER concur.